# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BERKLEY INSURANCE CO.,** * | |
| Plaintiff * | |
| v. * | CIVIL NO. JKB-17-877 |
| **JOHN A. MORGAN III,** *et al.* * | |
| Defendants. * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Berkley Insurance Company brought this action against Defendants John A. Morgan III and LaDonna Morgan on March 31, 2017, alleging that Defendants had breached an indemnity agreement by not paying Plaintiff for costs it incurred in paying out claims on payment and performance bonds that Plaintiff had issued. (Compl., ECF No. 1.) Plaintiff's complaint contained three counts, but Plaintiff now moves for Summary Judgment only on Count I, seeking contractual indemnity. (Mot. Summ. J. ¶ 6, ECF No. 17.) Defendants have moved to dismiss (ECF No. 21). No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth in this memorandum, Plaintiff's Motion for Summary Judgment will be granted by accompanying order. Defendants' motion is construed as a motion for summary judgment and will be denied by accompanying order.

There are two initial matters to dispose of before proceeding to the facts of this case and the merits of the Parties' motions. First, Defendants deny that there is subject matter jurisdiction. (Ans. ¶ 4.) However, Plaintiff has citizenship in Delaware and Connecticut, Defendants are citizens of Maryland, and the amount in controversy exceeds $75,000. Therefore, this Court has

jurisdiction under 28 U.S.C. § 1332(a). Second, Defendants have moved to dismiss the case, and the Court must determine how to construe this motion. Defendants, who are proceeding *pro se*, filed this motion after Plaintiff's motion for summary judgment and well after Defendants had filed their answer (ECF No. 11). The motion is titled a "Motion for Dismissal" and seems to be filed pursuant to Federal Rule of Civil Procedure 60, which is the federal rule for relief from judgment, which would not be proper to consider at this time. Essentially the motion contains three arguments as to why Plaintiff should not prevail in this matter. Therefore, while titled as a motion to dismiss, the motion does not rely on any defense outlined in Rule 12(b) and so the Court will treat this filing as a response to Plaintiff's motion for summary judgment as well as a motion for summary judgment against the Plaintiff.

I.  *Background*

Sometime before April of 2015, GreeCon, a construction subcontractor that builds elevators, entered into a contract to install elevators at the MGM National Harbor. (Compl. ¶¶ 6-7.) GreeCon requested that Plaintiff issue payment and performance bonds securing GreeCon's commitments under their contract to construct the elevators. (Compl. ¶ 8; MGM National Bonds, Pl.'s Mot. Summ J. Ex. B, ECF No. 17-3.)[1] In April of 2015, Plaintiff issued such bonds on behalf of GreeCon. (*See* Compl. ¶ 8; MGM National Bonds.) In "partial consideration for Berkley to issue" those bonds, Brandey Rodgers, Managing Member of GreeCon, Defendant

---

[1] At times in Defendants' Answer they "deny" certain allegations, but do not actually respond to the substance of Plaintiff's allegation. Here, for instance, in paragraph eight of its complaint, Plaintiff alleges that "Berkley issued payment and performance bonds at the request of GreeCon, and in connection with the MGM National Project, including but not limited to those bonds numbered 0181945 (the 'MGM National Bonds')." (Compl. ¶ 8.) Defendants' answer to this allegation is "DENIES; No documentation provided JOHN A. MORGAN III nor LADONNA MORGAN approving or signing any portion of the 'MGM National Bonds.'" (Ans. ¶ 8.) However, Plaintiff does not allege that Defendants approved or signed the MGM National Bonds. Under Rule 8(b)(2) denials "must fairly respond to the substance of the allegation." Therefore, when the Defendants "deny" allegations but state reasons that are unrelated to the substance of the Plaintiff's allegations, the Court views those denials as admissions of the substance of Plaintiff's allegation. *See King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc.*, 180 F.R.D. 332, 334 (N.D. Ill. 1998) (deeming as admissions defendant's responses that did not respond to the substance of plaintiff's allegation but stated "Neither admit nor deny the allegations of said Paragraph–, but demand strict proof thereof.")).

2

John A. Morgan III, then a GreeCon employee, and his wife LaDonna Morgan all signed a "General Agreement of Indemnity" ("Indemnity Agreement") in which they all agreed to jointly and severally indemnify Plaintiff against "any and all demands, claims, liabilities, costs, losses, penalties, obligations, interest, damages and expenses of whatever nature or kind, including but not limited to attorneys' fees . . . and costs and fees incurred in investigation and adjustment of claims or potential claims." (*See* Pl.'s Mot. Summ. J. Ex. A, Ibsen Aff. ¶ 5, ECF No. 17-2, hereinafter "Ibsen Aff."; General Agreement of Indemnity, Pl.'s Mot. Summ. J. Ex. D ¶ 1, ECF No. 17-5, hereinafter "Indemnity Agreement".) Essentially, Plaintiff secured GreeCon, and Defendants indemnified Plaintiff, so that if GreeCon was unable to perform, Plaintiff would pay, but could collect from Defendants.

Ultimately, GreeCon apparently defaulted on its obligations under the contract, because "numerous claims" were submitted to Plaintiff. (Ibsen Aff. ¶ 6.) Plaintiff hired consultants to investigate some claims in part because Plaintiff was unfamiliar with the "niche area of construction [in] which GreeCon was involved." (*Id.* ¶ 7.) Overall, Plaintiff incurred $133,821.23 in legal and engineering consulting costs in association with these claims, including $78,293.50 in legal fees litigating the instant action. (*Id.* ¶ 11.) Plaintiff has paid out over $1.2 million dollars "pursuant to its obligations under the Bonds." (*Id.* ¶ 8.)

Plaintiff filed this lawsuit on March 31, 2017, seeking payment under the Indemnity Agreement, an injunction preventing Defendants from transferring or encumbering their assets, and specific performance of the Indemnity Agreement. (Compl., ECF No. 1.) Defendants answered on May 22. (ECF No. 11.) Defendants admit that they signed the Indemnity Agreement, and that they "did not contest any payments made by [Plaintiff] arising out of claims made on the Bonds." (Pl.'s Mot. Summ. J. Ex. E, First Set of Requests for Admission 5-6, ECF

No. 17-6.)[2] Furthermore, the Defendants do not deny that the Indemnity Agreement requires them to indemnify Plaintiff for claims, and associated costs, arising from the bonds.

**II.** *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

---

[2] Defendants did not respond to Plaintiff's Request for Admission within thirty days of receipt, and therefore the statements are considered admissions. *See* Fed. R. Civ. P. 36(a)(3).

4

### III. *Analysis*

The Indemnity Agreement contains a choice of law provision dictating that the Agreement be construed in accordance with the laws of the State of New York. (Indemnity Agreement ¶ 14.) Therefore, when construing the terms of the contract or its validity, the Court will do so under the law of the State of New York.

Plaintiff's contention is simple: Defendants signed a contract agreeing to indemnify Plaintiff if it had to pay claims under the performance and payment bonds it issued for GreeCon. Plaintiff has had to pay claims under those bonds, and now Defendants must be held to the contract. Defendants' response is somewhat more convoluted. The substance of Defendants' response is this: (1) Plaintiff issued these bonds "based on unfair, deceptive, or predatory practices" and knew that Defendants, who do not have sufficient assets to indemnify the Plaintiffs *now* (*see* Def.'s Mot Dismiss Ex. A, Personal Financial Statement, ECF No. 21-1), did not have sufficient assets to indemnify the Plaintiff *then*. (2) This is a "frivolous lawsuit" because Plaintiff has, apparently, chosen not to sue the President of GreeCon who also signed the Indemnity Agreement, and instead sued the Defendants. Because Plaintiff knows that Defendants are unable to pay, Plaintiff's choice to sue Defendants is frivolous. Finally (3) the only reason the project failed and GreeCon defaulted is that Defendant John A. Morgan III was "forced" to leave GreeCon, and if he had remained the project would have succeeded and Plaintiff would have suffered no loss.

These are serious statements, but they are misplaced. The question before the Court is whether the contract that Defendants signed is valid and enforceable. If it is, then Defendants must abide by this contract. If Plaintiff did engage in deceptive or unfair practices, then Defendants may have an action against it. If Defendant John A. Morgan III was improperly

terminated from his position at GreeCon, then he may have an action against GreeCon. But Defendants' arguments simply do not have purchase in *this* action, and therefore Defendants' motion, construed as a motion for summary judgment, will be denied. Again, the decisive question before the Court is whether the Indemnity Agreement is valid and enforceable.

The Court finds that the Indemnity Agreement is valid and enforceable. This Agreement is governed by the laws of New York and there is a case from New York that is squarely on point. *See International Fidelity Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453 (N.Y. App. Div. 1993). In *Spadafina*, a company, Autotronics Products, contracted with the United States Government to install lights at an airport. 596 N.Y.S. at 454. Autotronics subcontracted with Kelly Electrical, and obtained "performance and payment bonds indemnifying Kelly for its work." *Id.* International Fidelity Insurance Company agreed to act as surety for those bonds. *Id.* Joseph Spadafina, an employee of Autotronics, agreed to indemnify International. Kelly ultimately claimed that Autotronics did not pay Kelly for its work and filed a claim against International to cover. *Id.* International paid Kelly and then sought indemnification from Spadafina. *Id.* Spadafina refused to pay, claiming that Autotronics had paid Kelly but that Kelly had refused to accept its tender. *Id.* International moved for summary judgment, which was denied. *Id.* On appeal, the New York Appellate Division reversed.

The Appellate Division first explained that "[c]ourts [in New York] have upheld the validity of such contractual arrangements and have ruled that payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to the amount paid." *Id.* at 639 (citing cases). The court further explained that "it is irrelevant whether Spadafina was actually liable on the underlying debt to Kelly." *Id.* Instead, what was relevant was that:

> International has stated a prima facie case under the contract by submitting proper documentation of payment of the settlement to Kelly as well as the fees and costs

6

> incurred in making a settlement . . . and . . . Spadafina's conclusory affidavits are insufficient to raise a triable issue as to either the bona fides of the settlement or as to the reasonableness of its amount.

*Id.* at 454-55 (internal citations omitted).

Such is the case here. The Indemnity Agreement provides that Defendants are to "[i]ndemnify and save harmless [Plaintiff] from and against any and all demands [and] claims." Plaintiff has paid out claims arising from the bonds that it issued. New York courts have upheld the validity of such agreements. *Id.* at 638. Defendants do not dispute the "bona fides" of the claims that Plaintiff has paid out, or the reasonableness of those amounts. *See id.* at 639. Rather, Defendants raise "irrelevant" claims, including, as in *Spadafina*, claims against a third party (GreeCon) that have no bearing on Plaintiff's right to collect under the contract. *See id.* at 638. In short, there is no dispute of material fact as to whether the contract is valid and enforceable, or whether the amounts that Plaintiff has paid out or expended are reasonable. *See id.* at 639 ("[P]ayments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to the amount paid."). Plaintiff is entitled to judgment as a matter of law.

**IV.** *Conclusion*

There is no dispute of material fact as to whether the Indemnity Agreement is valid and enforceable or as to the amount that Defendants owe under the Indemnity Agreement. Therefore, Plaintiff's motion for summary judgment will be granted by accompanying order. Because Defendants' arguments do not contest the validity or enforceability of the Indemnity Agreement nor the amount due under the Indemnity Agreement, Defendants' Motion for Dismissal, construed as a Motion for Summary Judgment, will be denied by accompanying order. Judgment will be entered in favor of the Plaintiff and against Defendants John A. Morgan III and LaDonna Morgan on Count I, jointly and severally, in the amount of $1,345,976.49, plus

$21,572.50 prejudgment interest,[3] plus postjudgment interest at the prevailing federal rate until Defendants have paid the judgment.

DATED this 11th day of October, 2017

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

[3] Based on New York state law rate of 9%, *see* N.Y. C.P.L.R. § 5004 (McKinney), from August 7, 2017, the date of filing the Motion for Summary Judgment, on which Plaintiff was owed $1,345,976.49 by Defendants under the Indemnity Agreement. (*See* Ibsen Aff. ¶¶ 8, 11, 19.)